UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BORIS LIBERMAN,

                       Plaintiff,                      MEMORANDUM
                                                                     AND ORDER
    -against-

                                                                             09 CV 2423 (RML)

FEDEX GROUND PACKAGE SYSTEM,
INC., and JOHN DOE,

                       Defendants.
----------------------------------------------------------X

        Plaintiff Boris Liberman ("plaintiff") commenced this personal injury suit against defendants FedEx Ground Package System, Inc. ("FedEx") and one of its employees ("John Doe" or "employee") on May 12, 2009. On September 29, 2010, plaintiff moved to strike FedEx's answer on spoliation grounds. For the reasons set forth below, plaintiff's motion is granted in part and denied in part.

## BACKGROUND AND FACTS

        Familiarity with the facts of this litigation is assumed. Briefly, plaintiff contends that on September 26, 2006, John Doe was delivering packages to 470 Park Avenue South in New York, New York ("470 Park Ave. South"), and that, in the course of his deliveries, he negligently struck plaintiff with a hand-truck fully loaded with heavy boxes. (Complaint, dated May 12, 2009 ("Compl.").) Plaintiff claims that, as a result of FedEx's and John Doe's negligence, he suffered serious, severe, and permanent injuries. (Id. ¶¶ 26–27.)

        This action has a long and complicated procedural history. Plaintiff originally filed a case against FedEx, as well as other related FedEx entities, on February 4, 2007 in Kings County Supreme Court. (Affirmation of Steven Brill, Esq., dated Sept. 29, 2010 ("Brill Aff."), Ex. A.) At that time, plaintiff identified an individual named Villanueva Sancheze ("Sancheze")

as the FedEx delivery agent in question and also named him as a defendant. (Declaration of William P. Davis, Esq., dated Oct. 19, 2010 ("Davis Decl."), ¶¶ 8–9; Brill Aff., Ex. A.) The case was subsequently removed to federal court. (Id. ¶ 5, Ex. B.) On March 19, 2007, plaintiff's original counsel, Michael F. Kremins, Esq. ("Kremins"), sent a letter to FedEx's counsel stating that, because he and plaintiff had been unable to identify the delivery agent, plaintiff was discontinuing the action without prejudice, to continue investigating the identity of the individual who had delivered the packages. (Brill Aff. ¶ 7, Ex. D.) Subsequently, on March 29, 2007, the parties filed a stipulation of discontinuance without prejudice. (Id. ¶ 8, Ex. E.)

On June 4, 2007, Kremins sent another letter to FedEx's counsel; in the letter, he requested that FedEx provide him with a printout of all of its deliveries made to 470 Park Ave. South on September 26, 2005.[1] (Id. ¶ 9, Ex. F.) On July 11, 2007, Kremins contacted Eneslow, The Foot Comfort Center ("Eneslow"), a business located at 470 Park Ave. South, and he requested records of FedEx deliveries made to the business on September 26, 2006. (Second Reply in Support of Plaintiff's Motion to Strike Answer, dated Nov. 11, 2010 ("Pl.'s Second Reply"), Ex. 1.) Eneslow gave plaintiff tracking numbers of packages it had received on that date. (Id.)

On November 13, 2008, plaintiff, represented by new counsel, Sullivan & Brill LLP, filed an order to show cause against FedEx in Kings County Supreme Court, for pre-action discovery. (Brill Aff. ¶ 10, Ex. G.) On January 29, 2009, the court granted plaintiff's motion and ordered FedEx to provide plaintiff with the names and addresses of FedEx's employees who

---

[1] Plaintiff's counsel asserts that this date was "clearly a typographical error" and that FedEx "obviously knew" that Kremins meant to state September 26, 2006, the date of the alleged accident. (Brill Aff. ¶ 10 n.1)

delivered packages with three particular tracking numbers to 470 Park Ave. South on the date of the alleged incident. (Id., Ex. G.) Plaintiff had selected these tracking numbers from among those in Eneslow's records for that day because, according to Eneslow's records, the deliveries occurred closest to plaintiff's estimate of the time of the accident. (Transcript of Oral Argument, dated Nov. 10, 2010 ("Oral Arg. Tr."), at 9.) The court also ordered FedEx to produce any and all incident and accident reports regarding an incident occurring at that building on that date. (Brill Aff., Ex. G.) On May 4, 2009, FedEx served plaintiff with a letter indicating that it was unable to identify the employee(s) based upon the information provided in the order. (Id. ¶ 11, Ex. H.)

On May 12, 2009, plaintiff commenced the instant action in Kings County Supreme Court. The case was subsequently removed to this court on June 8, 2009. (Id. ¶ 13, Ex. J.) On May 24, 2010, plaintiff deposed Stephen Perratore ("Perratore"), FedEx's pickup and delivery manager in charge of operations in Manhattan. (See Transcript of Deposition of Stephen Perratore, dated May 24, 2010 ("Perratore Dep. Tr."), annexed as Ex. L to Brill Aff.) Perratore testified that a "trace" of a package's tracking number in FedEx's computer systems will provide information on who delivered that package. (Id. at 27–28.) He also indicated that he had recently attempted to trace the three tracking numbers that plaintiff provided in its order to show cause, but stated that he had found that the information related to the tracking numbers was no longer available. (Id. at 27.) Finally, he testified that tracking numbers are ordinarily reused about a year after a delivery, and, accordingly, information on tracking numbers from one or two years earlier would usually no longer be available. (Id. at 29.)

On June 8, 2010, plaintiff deposed Ricardo Griffith ("Griffith"), FedEx's other

pickup and delivery manager in Manhattan.  (See Transcript of Deposition of Ricardo Griffith, dated June 8, 2010 ("Griffith Dep. Tr."), annexed as Ex. M to Brill Aff.)  Griffith testified that he and Perratore had recently performed an unsuccessful trace of the tracking numbers provided by plaintiff.  (Id. at 19–20.)  Griffith also testified that he had contacted FedEx's IT department to see if anyone there could find the information requested; according to his testimony, the IT department told him the tracking numbers had been reused in 2009 and that, accordingly, the information was no longer available.  (Id. at 20.)

Plaintiff now moves to strike defendant's answer on spoliation grounds.  He argues that FedEx was "initially in possession of the documentation necessary to identify the individual who delivered the package on September 26, 2006," and that it "failed in its obligation to maintain and preserve" this documentation.  (Brill Aff. ¶ 22.)  Plaintiff contends that, as a result of FedEx's purported spoliation of the records, his ability to investigate the facts, depose the delivery person, and establish negligence were lost.  (Id.)  FedEx counters that the purportedly spoliated evidence "was not destroyed at a time that litigation was either pending or reasonably foreseeable" and that, furthermore, the lack of such evidence does not prejudice the plaintiff.  (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Strike, dated Oct. 19, 2010 ("Def.'s Mem. of Law"), at 1.)

## DISCUSSION

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire and Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted). "[A] district court may impose sanctions for spoliation, exercising its inherent power to control

litigation." Id. (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43–45 (1991); Sassower v. Field, 973 F.2d 75, 80–81 (2d Cir. 1992)).  There are three elements that a party moving for sanctions based on spoilation of evidence must establish: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (citing Byrnie v. Town of Cromwell, 243 F.3d 93, 107–08 (2d Cir. 2001)).  I will address each of these elements in turn.

### A. FedEx's Obligation to Preserve the Evidence

A party seeking sanctions for destroyed evidence must first show that "the party having control over the evidence . . . had an obligation to preserve it at the time it was destroyed." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998).  This obligation usually arises when a "party has notice that the evidence is relevant to litigation – most commonly when suit has already been filed . . . but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." Id.

Plaintiff argues that FedEx had such notice "[m]erely four months after the Plaintiff was injured on September 26, 2006," when plaintiff served it with the summons and complaint in the original lawsuit.  (Plaintiff's Memorandum of Law, dated Sept. 28, 2010 ("Pl.'s Mem. of Law."), at 2.)  According to plaintiff, records identifying the delivery agent were clearly relevant and, thus, FedEx had an obligation to place a litigation hold on them at a time when the records still existed in its system.  (Id. at 3–4.)  Moreover, plaintiff claims that even after the parties discontinued the first action, FedEx continued to have an obligation to maintain these

records because it knew that plaintiff and his counsel were continuing to investigate the identity of the agent. (Id. at 5.)

FedEx counters that the records were destroyed in the ordinary course of business at a time when it was under no obligation to preserve them because litigation was neither pending nor reasonably foreseeable. (Def.'s Mem. of Law at 1, 5.) First, FedEx asserts that after the original action between the parties was discontinued in March 2007, it did not anticipate future litigation. (Id. at 5–6.) Because plaintiff's focus was initially on Sancheze, FedEx claims it believed that "plaintiff may simply have sued the incorrect delivery company, and, accordingly, that no further legal action would be instituted against FedEx." (Def.'s Mem. of Law, at 6; see also Oral Arg. Tr. at 11.) Second, FedEx claims that, even after plaintiff retained new counsel in September 2007, the focus of plaintiff's investigation remained on locating Sancheze; because there was no FedEx employee with that name, FedEx did not think plaintiff would institute a new action. (Def.'s Mem. of Law at 7.) Finally, FedEx asserts that, as per Perratore's deposition testimony that tracking numbers are recycled about a year after delivery, the records were likely destroyed in the ordinary course of business around September 26, 2007. (Id. at 5.)

I find FedEx's arguments unpersuasive. Even if plaintiff's initial lawsuit focused on Sancheze, FedEx certainly had notice that information on all deliveries made to 470 Park Ave. South on the day of the purported incident might be relevant to the action. Moreover, after the first case was voluntarily dismissed, FedEx should have known that the records may be relevant to future litigation. When plaintiff agreed to dismiss the lawsuit, he made it clear that he was continuing to investigate deliveries that were made that day (see Brill Aff. ¶ 7, Ex. D.), and, in June 2007, plaintiff's counsel again alerted FedEx that he was attempting to determine

identifying details about the deliveries. (Id. ¶ 9, Ex. F.) Finally, Griffith's deposition testimony that the FedEx's IT department told him the tracking numbers had been reused in 2009 (see Griffith Dep. Tr. at 20) directly contradicts FedEx's assertion that the numbers were probably recycled by or around September 26, 2007. Thus, plaintiff has amply shown that FedEx had notice that the records were relevant to litigation and that, as a result, it had an obligation to preserve them.

### B. FedEx's Culpability

The party who destroyed evidence must also have had a "culpable state of mind." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002). The Second Circuit has held that courts must determine culpability on a case by case basis. See Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir. 1999) (explaining that a case by case approach is appropriate because, at various times, the Second Circuit has required a party to have intentionally destroyed evidence, has required action in bad faith, and has allowed an adverse inference based on gross negligence). "[I]t makes little sense to confine promotion of [spoliation sanctions] to cases involving only outrageous culpability, where the party victimized by the spoliation is prejudiced irrespective of whether the spoliator acted with intent or gross negligence." Id. at 267–68. A "culpable state of mind" can mean "knowingly, even if without intent to breach a duty to preserve [the evidence], or *negligently*." Residential Funding Corp., 306 F.3d at 108 (emphasis in original) (internal citations and quotations omitted).

Plaintiff argues that "the destruction of the identifying evidence was, at the very least, grossly negligent, and given the sequence of events, possibly willful." (Pl.'s Mem. of Law at 5.) He argues that from FedEx's perspective, providing the records would have prevented it

from arguing that it was not involved in the incident and, had plaintiff been able to identify John Doe, the FedEx agent might have destroyed diversity of citizenship. (Id. at 5–6.) However, plaintiff provides no direct evidence to show intentional destruction of the records or bad faith. Defendant, on the other hand, argues that the destruction of the records did not even amount to negligence because there was no reason for FedEx to have maintained the information plaintiff now seeks. (Def.'s. Mem. of Law at 8.)

Given that, as expressed above, FedEx had an obligation to preserve the relevant records, FedEx was at least negligent in its failure to do so. As a result, plaintiff has met his burden with respect to showing that FedEx was culpable.

### C. Relevance of Destroyed Evidence & Appropriate Sanction

Finally, the court must determine relevance, meaning "whether there is any likelihood that the destroyed evidence would have been of the nature alleged by the party affected by its destruction." Kronisch, 150 F.3d at 127. Because plaintiff has presented no evidence that the tracking numbers were recycled in bad faith,[2] as the "prejudiced party" he has the burden to produce some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed records. Id. at 128. However, courts must take care not to "hold[] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence," because doing so "would subvert the . . .

---

[2] "When evidence is destroyed in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance." Zabulake v. UBS Warburg LLC, 229 F.R.D. 422, 431 (S.D.N.Y. 2004). However, "when the destruction is negligent, relevance must be proven by the party seeking sanctions." Id. Such proof is necessary because, in cases of negligent destruction of evidence, "it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him." Id.

purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction." Id.

Plaintiff argues that the records were relevant because, with information derived from them, he would have been able to identify and depose the delivery agent, and the delivery agent could have confirmed the basic sequence of events. (Pl.'s Mem. of Law at 6–7; see also Oral Arg. Tr. at 22.) He further contends that this information could have led to an admission or summary judgment. (Plaintiff's Reply Memorandum of Law, dated Oct. 27, 2010 ("Pl.'s Reply Mem."); see also Oral Arg. Tr. at 22). FedEx, on the other hand, counters that "the only potential outcome in obtaining the electronic evidence plaintiff seeks is identification of a delivery person[,]" because, whether the delivery agent would testify consistently with plaintiff's version of events "is all pure speculation." (Def.'s Mem. of Law at 9.) Moreover, FedEx argues that the absence of the delivery person's testimony could just as likely be prejudicial to plaintiff because the agent's testimony might well contradict plaintiff's version of events. (Id.)

I agree with FedEx that it is "pure speculation" to say that, once identified, the delivery person would have corroborated plaintiff's version of events. However, plaintiff is correct that the destroyed records are relevant insofar as there is a strong likelihood that they would have shown whether a FedEx agent delivered packages to 470 Park Ave. South on the day of the alleged incident. Because FedEx contests this fact and the records would certainly have been relevant for proving this fact, it is appropriate to impose a sanction on FedEx for its spoliation of the records.

"[A] district court may impose sanctions for spoliation, exercising its inherent

power to control litigation." West, 167 F.3d at 779 (citing Chambers, 501 U.S. at 43–45 (1991); Sassower, 973 F.2d at 80–81). Traditional sanctions for spoliation include preclusion, monetary sanctions, or an adverse inference instruction. See Residential Funding Corp., 306 F.3d at 101; Sterbenz v. Attina, 205 F. Supp. 2d 65, 74 (E.D.N.Y. 2002) ("[O]rdinarily, the sanctions for spoliation involve preclusion of evidence, the drawing of an adverse inference, dismissal or default." (citation omitted)); Remee Products Corp. v. Sho-Me Power Elec. Co-op, No. 01 Civ. 5554, 2002 WL 31323827, at *8 (S.D.N.Y. Oct. 17, 2002) (a district court "has considerable discretion to impose a wide range of sanctions for purposes of leveling the evidentiary playing field and punishing the improper conduct," including "dismissal of the culpable party's suit, granting summary judgment in favor of the prejudiced party, precluding the culpable party from giving testimony regarding the destroyed evidence, or giving an adverse inference instruction to the jury against the culpable party.").

    In the present action, plaintiff requests that FedEx's answer be stricken and that a default judgment be imposed against it. However, the equities do not favor such a drastic remedy. There is no evidence of bad faith on the part of FedEx and, as stated above, it cannot be said that there is any likelihood that the destroyed records would have corroborated plaintiff's account of events, except insofar as confirming that FedEx made deliveries to 470 Park Ave. South on September 26, 2006. As a result, the proper remedy for the spoliation in this case is an adverse inference against FedEx that one of its agents delivered packages to 470 Park Ave. South on the date in question, a fact that FedEx has contested. See Kronisch, 150 F.3d at 126 (the spoliation of evidence relevant to "proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.") One of the

purposes of an adverse inference is to "restor[e] the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party. Id. In this case, an adverse inference would restore plaintiff to such a position.

## CONCLUSION

For the above reasons, plaintiff's motion to strike defendant's answer is granted in part and denied in part. At trial there will be an adverse inference against FedEx that one of its agents delivered packages to 470 Park Ave. South on September 26, 2006.

SO ORDERED.

Dated: Brooklyn, New York
January 18, 2011

/s/
ROBERT M. LEVY
United States Magistrate Judge